**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN BORZYMOWSKI,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-00904<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Steven Borzymowski seeks judicial review of the final decision of Defendant Commissioner of Social Security denying his application for Social Security Disability Benefits. (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 4.) For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## I. Procedural History

On September 19, 2016, Mr. Borzymowski protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability since May 20, 2015.[1] (Tr. 11, 1038, 1869.) He alleged disability due to neck pain, migraines, hand numbness, vertigo, hypertension, gout, sleep apnea, GERD, tinnitus. (Tr. 323, 341, 440.) His application was denied at the initial level and upon reconsideration (323-31, 341-47), and he requested a hearing (Tr. 348-49). He received three unfavorable Administrative Law Judge ("ALJ") decisions. (Tr. 8-30, 1035-60, 1866-98.)

[1] A prior application for DIB was denied by an Administrative Law Judge on May 18, 2015. (Tr. 1038, 1869.)

The first unfavorable ALJ decision was issued on January 30, 2019 (Tr. 8-30) and was reversed and remanded by the District Court on February 11, 2021, per stipulation of the parties (Tr. 1134). The District Court ordered the ALJ to reweigh the medical opinion evidence and consider whether Mr. Borzymowski had any manipulative limitations. (*Id.*) The Appeals Council then vacated the final decision of the Commissioner and remanded the matter on April 29, 2021, for resolution of the following issues: inadequate evaluation of opinion evidence; and inadequate evaluation of Mr. Borzymowski's manipulative limitations. (Tr. 1136-40.)

The second unfavorable ALJ decision was issued on October 6, 2021 (Tr. 1035-60) and was reversed and remanded by the district court on March 13, 2023 (Tr. 1828, 1829-60). The district court found remand was warranted because the ALJ's reasoning as to the degree of restriction for handling, fingering, and feeling was inadequate and the decision lacked the support of substantial evidence. (Tr. 1858.) The Appeals Council again vacated the final decision of the Commissioner and remanded the matter for further proceedings consistent with the district court's order. (Tr. 1863.)

The third unfavorable ALJ decision was issued on May 1, 2024. (Tr. 1866-98.) The ALJ found Mr. Borzymowski had not been under a disability within the meaning of the Social Security Act from May 20, 2015, through September 30, 2017, the date last insured. (*Id.*) The Appeals Council considered Plaintiff's written exceptions to the ALJ's decision and found no reason to assume jurisdiction, making the ALJ's May 1, 2024 decision the final decision of the Commissioner. (Tr. 1763-68.)

On May 6, 2025, Mr. Borzymowski filed a Complaint challenging the Commissioner's final decision denying his claim for DIB. (ECF Doc. 1.) The matter is fully briefed. (ECF Docs. 8, 10.) Mr. Borzymowski raises two issues in this appeal:

(1) whether the ALJ's finding of frequent handling and fingering ignored the directive of the remand order and cherry-picked the evidence and failed to build a logical bridge; and

(2) whether the ALJ erred in limiting Plaintiff's cane use to ambulation only.

(ECF Doc. 8, pp. 1, 13-21.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Borzymowski was born in 1970 and was a younger individual under Social Security regulations from the alleged onset date through the date last insured. (Tr. 1884.) He has at least a high school education. (*Id.*) He had past work as a material handler, forklift driver, and machine operator. (Tr. 1883-84.)

### B. Relevant Treatment History

#### 1. Treatment History Prior to the Date Last Insured[2]

Throughout 2015, Mr. Borzymowski treated with pain management specialist Adam Hedaya, M.D., at Fisher-Titus Medical Center, for neck pain, headaches, and migraines. (Tr. 642-43, 644-45, 646-47, 648-49, 698-99.) At an appointment on April 23, 2015, Mr. Borzymowski reported that Botox injections had improved his headaches and neck range of motion but said his pain persisted. (Tr. 642.) Dr. Hedaya noted that Mr. Borzymowski's range of motion appeared to be improving, and recommended a repeat Botox injection. (Tr. 643.) Mr. Borzymowski complained of dizziness, but the etiology was unclear. (*Id.*) Dr. Hedaya diagnosed cervicogenic headaches, cervical dystonia, and chronic headaches. (Tr. 642-43.) Mr. Borzymowski received a Botox injection on June 9, 2015. (Tr. 644.)

[2] Mr. Borzymowski's date last insured was September 30, 2017. (Tr. 288, 1872.) "[T]o establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citations omitted).

On July 28, 2015, Mr. Borzymowski reported no relief from the Botox injection. (Tr. 646.) He complained of paresthesia down his arms, greater on the left than right. (*Id.*) He reported Percocet, ibuprofen, and Lidocaine helped with his pain, but he also said his pain was incapacitating at times. (*Id.*) An examination showed severe tenderness and guarding over the cervical spine, positive facet loading maneuvers, mild tenderness over the occipital area, and symmetrical and depressed reflexes in both upper extremities. (Tr. 647.) The examination also noted: no hyperalgesia or dysesthesia; good strength in upper extremities; nonfocal neurological sensorimotor examination in distribution of C3 to T1; no signs of myelopathy; and negative Hoffman's and Tinel sign. (*Id.*) His gait and station were stable. (*Id.*) Dr. Hedaya recommended bilateral cervical facet injections at the C2 to C5 facet joints, with a possible rhizotomy if Mr. Borzymowski did well with the facet injections. (*Id.*) Bilateral C2-C5 facet joint injections were administered on August 14, 2015. (Tr. 691-93.)

Mr. Borzymowski reported severe pain and minimal relief from the facet injections when he saw Dr. Hedaya on September 9, 2015. (Tr. 648.) His examination noted: hyperalgesia and dysesthesia along the occipital area and C3 dermatome; severe tenderness to palpation of the cervical spine with considerable dystonia and spasm; limited range of motion; pain with flexion, rotation, and extension; positive facet loading maneuvers; poorly localizable nonfocal neurological sensory motor examination in the distribution of C2-T1; depressed but symmetrical reflexes in the bilateral biceps, triceps, and brachial radialis; negative Hoffman; and equivocal Spurling. (Tr. 648-49. ) As recommended by Dr. Hedaya (Tr. 649), Mr. Borzymowski received bilateral occipital nerve blocks on October 22, 2015 (Tr. 650-51).

On November 20, 2015, Mr. Borzymowski saw his primary care physician Paul Bruner, D.O., for intractable, chronic tension type headaches, epidemic cervical myalgia, and essential

hypertension. (Tr. 727.) His examination showed muscle tenderness in the cervical spine, but full range of motion in the neck, normal motor strength in the upper and lower extremities, and intact sensation. (Tr. 728.)

On December 9, 2015, Mr. Borzymowski returned to Dr. Hedaya complaining of severe pain and dystonia. (Tr. 652.) His pain was incapacitating at times, even with medication. (*Id.*) Examination showed: severe tenderness to palpation over the cervical spine on the right side; positive facet loading maneuvers; spasm, torticollis, and dystonia in the cervical spine; nonfocal neurological sensorimotor examination in the distribution C3 to T1; hyperalgesia and dysesthesia along the occipital nerve; no clonus or signs of myelopathy; and depressed but symmetrical reflexes in the bilateral biceps, triceps, and brachial radialis. (*Id.*) Dr. Hedaya recommended cervical radiofrequency ablation. (Tr. 653.) Mr. Borzymowski told Dr. Hedaya said he wanted a prescription for a cane. (*Id.*) Dr. Hedaya provided a Medrol Dosepak (*id.*) and a prescription for a "standard cane" to be used as directed for a diagnosis of low back pain (Tr. 556, 653).

Mr. Borzymowski continued to see Dr. Hedaya through July 2016 for headaches and neck, back, and foot pain.[3] (Tr. 654-55, 656-57, 658-59, 660-61, 662-64, 665-66.) Mr. Borzymowski started seeing pain management specialist Sherif Zaky, M.D., at FPG Management in September 2016 for his back and neck pain (Tr. 745-48, 749-52, 779-82) after he was discharged from Dr. Hedaya's office (Tr. 749).

On January 18, 2016, Mr. Borzymowski underwent right-sided cervical radiofrequency ablation at the C2-3, C3-4, and C4-5. (Tr. 639.) On February 18, 2016, he reported some relief from the ablation procedure. (Tr. 654.) His examination was "notable for considerable guarding over the cervical spine." (*Id.*) Facet loading maneuvers persisted but were somewhat improved.

[3] Mr. Borzymowski also saw his primary care physician for tension-type headaches / migraines in 2016. (Tr. 724.)

(*Id.*) There was some associated spasm. (*Id.*) His examination also noted: nonfocal neurological sensory motor examination in upper extremities; no clonus; and no signs of myelopathy. (*Id.*) His reflexes continued to be depressed but symmetrical. (Tr. 654-55.) Hoffman and Spurling were negative and there was no peripheral edema, lymphadenopathy, or signs of myelopathy. (Tr. 655.) Dr. Hedaya continued to prescribe Percocet for pain. (*Id.*)

Mr. Borzymowski saw Dr. Hedaya on March 3, 2016, reporting that he continued to have neck pain and headaches, but that ablations were somewhat helpful. (Tr. 656.) Percocet and Motrin helped and his pain was manageable, but he complained of occasional paresthesia in his neck and fingertips bilaterally. (*Id.*) His examination findings included: guarding; dystonia; limited range of motion; positive facet loading maneuvers; no muscle atrophy, fasciculations, or spasms; nonfocal neurological sensory motor examination in distribution C3 to T1; depressed reflexes, symmetrical in the bilateral patella and ankle; negative Tinel sign; good capillary refill; and no peripheral edema lymphadenopathy, or signs of myelopathy. (Tr. 656-57.)

Mr. Borzymowski saw Dr. Hedaya on March 31, 2016, and reported the cervical ablation "helped tremendously." (Tr. 708.) He continued to report that Percocet helped. (*Id.*) Guarding and tenderness over the cervical spine with positive facet loading maneuvers was improved. (Tr. 709.) There was no dystonia and no noted range of motion limitations. (*Id.*)

On May 12, 2016, Mr. Borzymowski returned to Dr. Hedaya. (Tr. 710-11.) His gait and station were stable, and he ambulated with a cane. (Tr. 701.) He complained of paresthesia down his arms and hands. (*Id.*) Mr. Borzymowski was scheduled for sleep apnea surgery. (Tr. 711.) Dr. Hedaya discussed weaning Mr. Borzymowski off Percocet following his surgery and looking for alternatives to treat his pain. (*Id.*)

Two months later, on July 13, 2016, Mr. Borzymowski returned to Dr. Hedaya for severe intractable neck and back pain. (Tr. 665-66.) He reported no relief with tramadol, and said the pain traveled into his arms and hands. (Tr. 665.) He could not sleep and could barely function due to the pain. (*Id.*) Mr. Borzymowski was visibly distressed on examination, and he ambulated with a cane. (Tr. 656-66.) His examination also showed: severe tenderness and guarding over the cervical spine; limited range of motion; considerable dystonia; pain with forward flexion, extension, and lateral rotation; poorly localizable neurological sensory motor examination in the upper and lower extremities; swelling in the hands but no edema or erythema; no laxity of the joints; severe tenderness of the lumbosacral spine and the right buttock area; positive facet loading maneuvers; depressed but symmetrical reflexes in the bilateral biceps, triceps, and brachial radialis. (*Id.*) Dr. Hedaya discontinued tramadol, started Mr. Borzymowski on tizanidine and Effexor, and gave him a Toradol shot. (Tr. 666.)

On August 18, 2016, Mr. Borzymowski presented to Dr. Bruner regarding his chronic pain. (Tr. 722.) His examination showed: normal motor strength and intact sensation, without clubbing or edema; decreased cervical spine range of motion; neck pain; and degenerative joint disease changes in his hands. (Tr. 723.) Dr. Bruner noted that codeine had worked well in the past. (Tr. 722.) He provided Mr. Borzymowski with a prescription for acetaminophen-codeine and referred him to Sherif Zaky, M.D., for pain management. (*Id.*)

Mr. Borzymowski saw Dr. Zaky on September 20, 2016, reporting limited range of motion and pain in his neck, intermittent numbness in both hands, frequent headaches, low back pain, and frequent loss of balance. (Tr. 749.) Mr. Borzymowski could heel toe walk with assistance and he ambulated with an antalgic gait. (Tr. 751.) Hoffman and Spurling tests were negative. (*Id.*) Faber and straight leg raise tests were positive bilaterally. (*Id.*) In the cervical

spine, there was: tenderness on palpation in the paraspinal muscles and severe range of motion limitation; normal motor exam and sensation; and intact reflexes. (*Id.*) Mr. Borzymowski's grip strength was stronger on the right than left. (*Id.*) In the lumbar spine, there was right-sided paraspinal tenderness, positive facet loading, normal sensation, and intact reflexes. (*Id.*) Dr. Zaky referred Mr. Borzymowski for aqua therapy,[4] increased tizanidine, and prescribed acetaminophen-codeine. (Tr. 752.)

On October 18, 2016, Mr. Borzymowski returned to Dr. Zaky for medication refills. (Tr. 745-47.) Mr. Borzymowski could heel toe walk with assistance. (Tr. 747.) He ambulated with an antalgic gait. (*Id.*) Hoffman and Spurling tests were negative. (*Id.*) Faber and straight leg raise tests were positive bilaterally. (*Id.*) Examination of the cervical spine showed tenderness to the bilateral cervical paraspinal muscles, severe limitation of motion of the cervical spine, bilateral occipital and supraorbital tenderness, normal sensation and motor exam, and intact reflexes. (*Id.*) Mr. Borzymowski's grip strength was stronger on the right than left. (*Id.*) Examination of the lumbar spine showed right-sided lumbar paraspinal tenderness, positive facet loading, normal sensation, and intact reflexes. (*Id.*) Mr. Borzymowski's acetaminophen-codeine was continued, and Topamax was added. (*Id.*) Dr. Zaky ordered a lumbar x-ray and recommended bilateral occipital nerve blocks. (Tr. 748.)

A cervical MRI and lumbar x-ray were taken on November 10, 2016. (Tr. 892-95.) The cervical MRI showed slight asymmetrical posterior disco-osteophytosis at the right subarticular level of C4-5, mild broad-based annular bulging at C5-6, and slight central annular bulging at C6-7. (Tr. 892-93.) The lumbar x-ray showed no compression deformity, disc narrowing at the lumbar spine except for L4-5, and facet joint arthrosis at L5-S1. (Tr. 895.)

---

[4] Mr. Borzymowski attended 17 physical therapy sessions from September 29 to December 13, 2016. (Tr. 758-67.)

At Dr. Zaky's recommendation, Mr. Borzymowski had cervical facet medial branch blocks in December 2016 (Tr. 779) and January 2017 (Tr. 771, 775.) Mr. Borzymowski reported minimal relief on December 15, 2016, following the first facet block. (Tr. 779.)

On January 6, 2017, Dr. Zaky ordered a lumbar MRI. (Tr. 890-91.) The MRI showed: moderate disc narrowing at L5-S1 with mild central disc protrusion with hardly any anterior indentation of the thecal sac at that level; and slight broad-based annular bulging at L3-L4. (Tr. 890-91.) On January 12, 2017, Mr. Borzymowski reported more than 60% pain relief for eight hours following the facet block procedure along with increased function. (Tr. 775.) Mr. Borzymowski could heel toe walk with assistance. (Tr. 777.) His gait was antalgic. (*Id.*) Hoffman, Spurling, and straight leg raise tests were negative. (*Id.*) Faber testing was positive bilaterally. (*Id.*) Examination of the cervical spine showed tenderness to the bilateral paraspinal muscles, severe limitation of range motion, bilateral occipital and supraorbital tenderness, normal sensation and motor exam, and intact reflexes. (*Id.*) Mr. Borzymowski's grip strength was stronger on the right than left. (*Id.*) Examination of the lumbar spine showed bilateral lumbar paraspinal tenderness, positive facet loading, normal sensation, and intact reflexes. (*Id.*) Dr. Zaky recommended a second cervical facet medial branch block. (Tr. 778.)

On January 31, 2017, Mr. Borzymowski reported more than 70-80% pain relief for six to eight hours following the facet block procedure along with increased function. (Tr. 771.) He continued to complain of neck pain and frequent headaches. (*Id.*)

On February 17, 2017, Mr. Borzymowski saw Dr. Bruner for a six-month follow up regarding intractable chronic tension-type headaches, essential hypertension, cervical myalgia, migraine headaches, dizziness and giddiness, and gout. (Tr. 785.) His examination showed: full

range of motion in the neck; no clubbing, cyanosis, or edema in the extremities; tenderness in the wrists; normal motor strength in the upper and lower extremities; and intact sensation. (Tr. 786.)

In mid-February 2017, Mr. Borzymowski received cervical facet medial branch radiofrequency denervation on the right at C3, C4, C5 and C6. (Tr. 823.) At a follow up with Dr. Zaky on March 1, 2017, Mr. Borzymowski reported minimal relief from the procedure and continued to complain of cervical pain and frequent headaches. (*Id.*)

On April 18, 2017, Mr. Borzymowski followed up with Dr. Zaky after receiving a cervical branch block a week earlier. (Tr. 815.) He reported 30% relief of pain for three to four hours following the procedure. (*Id.*) Mr. Borzymowski could heel toe walk with assistance. (Tr. 817.) Hoffman and Spurling tests were negative. (*Id.*) Straight leg raise and Faber tests were positive bilaterally. (*Id.*) Examination of cervical spine showed: tenderness to the bilateral cervical paraspinal muscles (worse on the left); severe limitation of range of motion on the left; moderate limitation of range of motion on the right; normal sensation and motor exam; and intact reflexes. (*Id.*) Mr. Borzymowski's hand grip strength was stronger on the right than left. (*Id.*) Examination of the lumbar spine showed bilateral paraspinal tenderness and bilateral tenderness to the sacroiliac more on the right. (*Id.*) There was bilateral intrascapular tenderness in the thoracic spine. (*Id.*) Dr. Zaky recommended not repeating the cervical radiofrequency ablation because Mr. Borzymowski did not receive significant pain relief following the medial branch nerve blocks even for brief periods of time. (Tr. 818.) He indicated that future occipital nerve blocks might be considered. (*Id.*)

Mr. Borzymowski followed up with Dr. Zaky on May 15, 2017, complaining of a severe headache and reporting headaches three to five times a week. (Tr. 811.) He felt Tylenol #4 was providing him with adequate relief for the headaches. (*Id.*) Physical examination findings were

similar to those from his April visit. (*Compare* Tr. 813 *with* Tr. 817.) Dr. Zaky administered an occipital nerve block and supra orbital and supra trochlear nerve blocks. (Tr. 814.)

Mr. Borzymowski returned to Dr. Zaky for follow up on June 19, 2017. (Tr. 807.) He continued to complain of headaches and also complained of neck pain with radiation to his right shoulder. (*Id.*) He reported 80% improvement from his last injection but said it only lasted for three days. (*Id.*) Mr. Borzymowski could heel toe walk with assistance. (Tr. 809.) Examination of the head/face showed bilateral occipital tenderness on the right and supraorbital tenderness. (*Id.*) Hoffman and Spurling tests were negative. (*Id.*) Straight leg raise and Faber tests were positive bilaterally. (*Id.*) Examination of the cervical spine showed: tenderness to the bilateral cervical paraspinal muscles (worse on the left); tenderness to the occipital area; right hand grip stronger than on the left; severe limitation of range of motion on the left; significant limitation of range of motion on the right; normal sensation and motor exam; and intact reflexes. (*Id.*) Examination of the lumbar spine showed bilateral paraspinal tenderness and bilateral tenderness to the sacroiliac more on the right. (*Id.*) There was bilateral intrascapular tenderness in the thoracic spine. (*Id.*) Dr. Zaky recommended a right occipital nerve block. (Tr. 810.)

Mr. Borzymowski returned to Dr. Zaky on July 11, 2017, after receiving a cervical facet medial branch block on the right at C2 and third occipital nerve. (Tr. 804.) He reported 80% relief and functionality for six hours following the procedure, but continued neck pain and headaches. (*Id.*) Examination findings were similar to those from his June visit. (*Compare* Tr. 805 *with* Tr. 809.) Dr. Zaky recommended another right occipital nerve block. (Tr. 805.)

Mr. Borzymowski returned to Dr. Zaky on August 2, 2017, after receiving another cervical facet medial branch block at C2 and the third occipital nerve. (Tr. 846.) He reported 80% pain relief with increased function for four and a-half hours following the procedure. (*Id.*)

He continued to complain of frequent headaches. (*Id.*) Physical examination findings were similar to those from his June and July visits. (*Compare* Tr. 848 *with* Tr. 805, 809.) Dr. Zaky recommended a right cervical facet medial branch block and third occipital nerve RFA. (Tr. 849.) Cervical ablation was performed on August 16, 2017. (Tr. 859.)

On August 25, 2017, Mr. Borzymowski saw Dr. Bruner following his ablation to confirm there was no infection. (Tr. 859.) Examination showed: full cervical range of motion; normal motor strength in upper and lower extremities; and intact sensation. (*Id.*) Mr. Borzymowski's diagnoses included chronic, intractable tension-type headache and cellulitis of the neck. (Tr. 859-60.) A few days later, Mr. Borzymowski followed up with Dr. Zaky on August 30. (Tr. 916.) He reported 50% pain relief for forty-eight hours following the ablation procedure. (*Id.*) He continued to complain of neck pain. (*Id.*) He reported improvement in his headaches, but said he still had headaches two to three times each week. (*Id.*) Mr. Borzymowski could heel toe walk with assistance. (Tr. 918.) Examination of the head/face showed bilateral occipital tenderness on the right and supraorbital tenderness. (*Id.*) Hoffman and Spurling tests were negative. (*Id.*) Straight leg raise and Faber tests were positive bilaterally. (*Id.*) Examination of cervical spine showed: tenderness to the bilateral cervical paraspinal muscles; tenderness to the occipital area; right hand grip stronger than on the left; severe limitation of range of motion; normal sensation and motor exam; and intact reflexes. (*Id.*) Examination of the lumbar spine showed bilateral paraspinal tenderness and bilateral tenderness to the sacroiliac more on the right. (*Id.*) There was bilateral intrascapular tenderness in the thoracic spine. (*Id.*) Dr. Zaky prescribed gabapentin for occipital neuralgia and recommended that Mr. Borzymowski give the procedure more time, noting it could take up to six weeks for maximum relief. (Tr. 919.)

On September 27, 2017, Mr. Borzymowski returned to Dr. Zaky for follow up. (Tr. 914.) He complained of neck and back pain, and a recent migraine that lasted 36 hours. (*Id.*) Physical examination findings were similar to those from his August visit. (*Compare* Tr. 914-15 *with* Tr. 918.) Dr. Zaky recommended an occipital nerve radiofrequency ablation. (Tr. 915.)

### 2. Treatment History Post-Dating Date Last Insured

An EMG completed by Steve Benedict, M.D. on April 26, 2019, showed moderate/severe bilateral carpal tunnel syndrome. (Tr. 1420-1422.) On May 15, 2019, Mr. Borzymowski returned to Dr. Zaky for follow up and medication refills. (Tr. 1428.) Hoffman and Spurling tests were negative. (Tr. 1429.) Examination of the cervical spine showed: tenderness on palpation to bilateral paraspinal muscles, more on right; no occipital tenderness; normal motor exam; normal sensation; intact reflexes; right hand grip strength greater on right than left; severe limitation of range of motion to the left. (*Id.*) Dr. Zaky recommended that Mr. Borzymowski continue with physical therapy and prescribed Lyrica for his neck pain. (*Id.*) Dr. Zaky also refilled Mr. Borzymowski's prescription for Tylenol #4 for his chronic pain. (*Id.*) Mr. Borzymowski declined Dr. Zaky's offer for a referral for his carpal tunnel. (*Id.*) He later underwent carpal tunnel release on the right wrist in February 2020. (Tr. 1531-33.)

## C. Relevant Medical Opinion Evidence

### 1. Medical Opinion Evidence Prior to the Date Last Insured

On November 23, 2016, state agency medical consultant Leon Hughes, M.D., adopted the residual functional capacity found in a prior May 18, 2015 hearing decision, which limited Mr. Borzymowski to light work except he could: sit, stand, or walk four hours in an eight-hour workday; occasionally climb stairs; never climb ladders; never crawl; rarely kneel or crouch; never balance on one lower extremity at a time or stoop greater than ninety degrees; never be

exposed to hazards including vibration or uneven floor surfaces; and never turn or twist neck or torso to ends of range of motion but could turn body to accommodate. (Tr. 296.)

Upon reconsideration, on September 16, 2017, state agency medical consultant Steve McKee, M.D., also adopted the prior ALJ's residual functional capacity assessment. (Tr. 314.) Dr. McKee reviewed evidence that included a December 2015 prescription for a standard cane to be used as directed for lower back pain, but concluded that the medical evidence of record did not indicate that an assistive device was needed for ambulation. (Tr. 310.)

On May 25, 2017, Dr. Bruner authored a letter stating:

> This is a note to confirm that Steven Borzymowski is my patient. Based on his medical conditions leading to pain and chronic vertigo, I believe he is unable to work for the upcoming time-frame of 12 months.

(Tr. 803.)

### 2. Medical Opinion Evidence Post-Dating Date Last Insured

On November 8, 2017, Dr. Bruner completed a Medical Source Statement. (Tr. 861-62.) He opined that Mr. Borzymowski: could lift/carry 10 pounds occasionally; stand/walk for a total of 1 hour with frequent rest periods, and 20 minutes without interruption; sit for a total of 3 hours with frequent adjustment and with neck support for longer periods of sitting, and 30 minutes without interruption; and rarely climb, balance, stoop, crouch, kneel, crawl, reach, push/pull, or perform fine or gross manipulation. (*Id.*) With respect to the exertional and postural limitations, Dr. Bruner explained that:

> Due to diagnosis of hypertension, vertigo, chronic tension headaches, migraine, cervical myalgia, and occipital neuralgia the patient is unable to lift any weight over 10 pounds, has a difficult time with walking, standing and sitting for prolonged periods of time, patient also has difficulty with repetitive movements. [Patient] also needs [assistance] of a cane when walking. [Patient] is rarely able to do postural activities due to vertigo and increase in pain.

(Tr. 861.) With respect to the manipulative limitations, Dr. Bruner explained that "excessive movements" were not recommended due to Mr. Borzymowski's diagnoses of epidemic cervical myalgia and chronic tension headaches. (Tr. 862.) Dr. Bruner further opined that Mr. Borzymowski should avoid exposure to heights, moving machinery, extreme heat pulmonary irritants, and noise due to his diagnoses of hypertension, vertigo, cervical myalgia, and chronic headaches. (Tr. 862.) Dr. Bruner stated that Mr. Borzymowski was prescribed a cane, walker, and brace, and he opined that Mr. Borzymowski would need to alternate between sitting, standing, and walking at will. (*Id.*) Dr. Bruner also opined that Mr. Borzymowski experienced moderate to severe pain that varied by day and his pain would: interfere with his concentration; take him off task; and cause him to be absent. (*Id.*) Dr. Bruner opined that Mr. Borzymowski would require additional 10-minute rest periods every hour on the hour for an average of an additional 80 minutes of rest time each day. (*Id.*) Finally, Dr. Bruner opined that Mr. Borzymowski was unable to work an 8-hour workday due to chronic pain, noting that Mr. Borzymowski saw a pain management specialist with little relief. (*Id.*)

On October 1, 2018, Dr. Bruner completed another Medical Source Statement. (Tr. 1027-28.) He opined that due to Mr. Borzymowski's neck pain and cervical radiculopathy, he was limited to lifting/carrying 10 pounds occasionally and 5 pounds frequently. (Tr. 1027.) He opined that due to Mr. Borzymowski's low back pain and stiffness, he needed a cane to walk and was limited to standing/walking for a total of 3 hours, and 15 minutes without interruption. (*Id.*) Dr. Bruner opined that Mr. Borzymowski was limited to sitting for a total of 5 hours, and 30 minutes without interruption, with the need to frequently change positions due to low back and neck pain. (*Id.*) Dr. Bruner opined that: Mr. Borzymowski's back condition "relegated him to mostly sedentary activity"; his dizziness affected his balance; and he could rarely climb, stoop,

crouch, kneel, or crawl and occasionally balance. (*Id.*) Due to Mr. Borzymowski's neck symptoms and cervical radiculopathy, Dr. Bruner opined he could rarely reach, occasionally push/pull and perform fine manipulation, and frequently perform gross manipulation. (Tr. 1028.) Dr. Bruner further opined that Mr. Borzymowski could have no exposure to: heights due to dizziness at unexpected times; moving machinery due to his inability to move quickly; and extreme cold due to his musculoskeletal conditions. (*Id.*) Dr. Bruner indicated that Mr. Borzymowski was prescribed a cane and brace. (*Id.*) He opined that Mr. Borzymowski would require the ability to alternate positions between sitting, standing, and walking at will at short intervals, and he had severe pain that would interfere with concentration, take him off-task, and cause absenteeism. (*Id.*) He further opined that Mr. Borzymowski would need on average two to three additional hours of rest time during an 8-hour workday. (*Id.*) Finally, he opined that the "multiplicity of cervical/lumbar dysfunction and stiffness with [the] need for a cane and frequent position changes essentially make this patient unemployable." (*Id.*)

On October 12, 2023, Mr. Borzymowski presented to Mark Weaver, M.D., for a consultative examination. (Tr. 2278-96.) Dr. Weaver opined as to Mr. Borzymowski's functional abilities, stating:

> My medical assessment of Mr. Borzymowski's ability to do physical activities includes the following: in view of his neck and low back problems, left knee bilateral hand and great toe problems, along with shortness of breath and balance difficulties, all compounded by his problem of being overweight . . ., he would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, reaching, climbing, squatting, stooping, crouching, kneeling, crawling, lifting and carrying, operating at heights or around hazardous machinery, handling objects, and travel. He would probably be able to perform activities involving hearing, speaking, and following directions.

(Tr. 2283.)

**D. Plaintiff's Function Report**

In a Function Report completed on October 27, 2016, Mr. Borzymowski reported that migraine headaches made almost any activity impossible. (Tr. 451.) He reported neck and low back pain. (*Id.*) He said he used a cane to help with pain and balance, and reported problems holding onto and manipulating objects due to numbness in his hands. (*Id.*)

**E. Hearing Testimony**

Mr. Borzymowski testified at the hearings on October 24, 2018 (Tr. 230-52), August 17, 2021 (Tr. 1066-79), and February 22, 2024 (Tr. 1775-88). At the most recent hearing, he testified that he was unable to work due to neck pain that led to migraines, back pain, and loss of dexterity, pain, and numbness in his hands. (Tr. 1780-81, 1788.)

Vocational experts ("VEs") testified at the three hearings. (Tr. 253-58, 1079-88, 1789-94.) At the third hearing, the ALJ adopted the following past relevant work findings from a prior decision: material handler, an SVP 3 job generally and actually performed at heavy; forklift driver, an SVP 3 job generally performed at medium and actually performed at heavy; and machine operator, an SVP 3 job generally and actually performed at medium. (Tr. 1790-1800.) The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's sedentary RFC (Tr. 1790-91, 1792-93, 1874-75) could not perform Mr. Borzymowski's past work but could perform jobs such as document preparer, credit card clerk, and distributing clerk (Tr. 1792-93). However, the VE testified there would be no jobs available if the individual needed to use a cane for ambulation and balance, not only for ambulation. (Tr. 1790-91.) The VE also testified there would be no jobs available if the individual could only occasionally handle and finger. (Tr. 1793-94.)

## III. Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § § 404.1520; 416.920[5]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform other work in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence

---

[5] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in most instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

shall be conclusive[.]" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

### B. First Assignment of Error: The ALJ Did Not Ignore the District Court Remand Order or Otherwise Err in Assessing Plaintiff's Manipulative Limitations

In his first assignment of error, Mr. Borzymowski argues that the ALJ ignored a prior district court remand order, cherry picked the evidence, and failed to build a logical bridge between the evidence and the result when she adopted an RFC limiting Mr. Borzymowski to frequent—rather than occasional—handling, fingering, and feeling with his upper extremities.

(ECF Doc. 8, pp. 13-16.) The Commissioner argues in response that the ALJ complied with the district court's remand order, considered conflicting evidence, and ultimately made a decision supported by substantial evidence when she found Mr. Borzymowski could frequently handle, finger, and feel with his upper extremities. (ECF Doc. 10, pp. 1-2, 9-13.) The Court agrees.

When the district court reversed and remanded the 2021 ALJ decision, it held that the decision lacked the support of substantial evidence because "the ALJ offered no insight into how she determined the degree of restriction for handling, fingering, and feeling," explaining:

> Aside from considering one treatment note showing depressed reflexes, one treatment note showing Mr. Borzymowski's reports of numbness and tingling, and treatment notes of limited range of motion testing in the bilateral hands, which the ALJ minimized by failing to articulate the degree of limitation as severe on the left and moderate to severe on the right, there is little within the ALJ's decision that allows this Court to trace the path of her reasoning between the evidence and the limitation to frequent handling, finger, and feeling, especially in light of the information the ALJ eschewed during her summarization of the medical evidence. While the ALJ is not required to cite every piece of evidence, the decision barely addresses the myriad of probative evidence related to Mr. Borzymowski's hand function. Furthermore, while the ALJ concluded Mr. Borzymowski's related hand and arm complaints during the review period are confirmed by the later acquired EMG, thus providing a basis for some limitation, the ALJ offered no insight into how she determined the degree of restriction for handling, fingering, and feeling. Without such insight into the ALJ's reasoning, the decision is not supported by substantial evidence and requires remand.

(Tr. 1858.) Before reaching this conclusion, the district court specifically observed that it was important to note that the medical records in evidence contained the following findings:

- consistently depressed biceps, triceps, and brachioradialis reflexes at no less than nine appointments between July 2015 and June 2016 (see Tr. 647, 648, 652, 654, 656, 659, 660, 663);

- swelling and degenerative joint changes in the hands (see Tr. 666, 723);

- consistent findings of weaker left grip strength than the right, and severe limitation of range of motion in the hands between September 2016 and June 2017 (see Tr. 750, 773, 777, 781, 809, 811, 821, 825);

- poorly localizable or nonfocal neurological sensory examinations in the cervical spine (see Tr. 642, 648, 652, 654, 656, 659, 660, 666); and

- multiple reports of numbness, tingling, severe pain, and loss of grip strength. (See Tr. 648, 723, 745, 749).

(Tr. 1856-57.)

In support of his argument that the new ALJ decision is "in direct conflict with both the medical record and the Court's prior remand instructions," Mr. Borzymowski asserts that the ALJ "again failed to analyze all the evidence in a meaningful way." (ECF Doc. 8, pp. 13-14.) He then identifies subjective complaints and objective findings in the record that he believes support additional manipulative limitations, but offers little insight into whether or how the ALJ addressed that and other relevant evidence in her decision. (*Id.* at p. 13.) Plaintiff's only reference to the evidence discussed by the ALJ in her decision is an acknowledgement that she did discuss certain EMG findings, although he asserts that she "improperly dismissed the EMG's probative value" and "engaged in the impermissible interpretation of raw medical data" when she did so. (*Id.* at pp. 14-15.)

The Commissioner, on the other hand, cites the specific medical evidence highlighted in the district court's remand order—i.e., the "myriad of probative evidence related to Mr. Borzymowski's hand function" that the district court found the ALJ "barely addresse[d]" in her prior decision (Tr. 1856-58)—and asserts that "[t]he ALJ considered almost all of the treatment records cited in the previous decision" and "where the ALJ did not consider the records identified in the decision . . . , she discussed other evidence, whereby doctors noted similar findings." (ECF Doc. 10, pp. 10-11 (citations omitted).) A review of the new ALJ decision bears out this observation. For example, the ALJ acknowledged exams showing depressed upper extremity reflexes between July 2015 and July 2016 (Tr. 1876-77), degenerative joint changes in Plaintiff's hands in August 2016 (Tr. 1877), left grip strength weaker than right (or right stronger

than left) and severe limitation in the cervical spine range of motion[6] between December 2016 and September 2017 (Tr. 1878-79), a non-focal neurological sensory motor exam from C2-T1 in September 2015 (Tr. 1876), and complaints of pain and numbness in his hands (Tr. 1875, 1877).

In addition to addressing the medical findings highlighted as "probative" in the remand order, the ALJ more broadly acknowledged and discussed the evidence relevant to her RFC findings as to Mr. Borzymowski's manipulative limitations. First, she observed: "Pursuant to the District Court remand order, Appeals Council has directed the undersigned to give further consideration to the claimant's residual functional capacity, specifically his ability to handle, finger, and feel with his bilateral upper extremities." (Tr. 1869.) She then considered and evaluated the evidence, including Mr. Borzymowski's testimony that he dropped objects due to lack of sensation in his fingers and pain in his hands, wore braces on his hands (Tr. 1875), and reported numbness and loss of sensation in his hands (Tr. 1877). The ALJ also considered objective medical findings that included left hand grip weakness as compared to the right, evidence of inflammation, decreased reflexes, bilateral wrist tenderness, cervical MRI results, limited cervical range of motion, decreased strength and sensation, and EMG results from 2019. (Tr. 1875-80.) Having considered the evidence, the ALJ concluded that Mr. Borzymowski's testimony that he dropped objects due to a loss of sensation in his hands and pain was not entirely supported by the evidence; she accounted for Mr. Borzymowski's hand and arm limitations by limiting him to frequent handling, fingering, and felling with his upper extremities. (Tr. 1880.) The ALJ further explained her findings as follows:

> A cervical spine MRI was performed on November 10, 2016, and it demonstrated slight central annual bulging at C6-7, mild broad-based annular bulging at C5-6,

---

[6] Although the district court remand order stated the records showed "severe limitation of range of motion in the hands" (Tr. 1856), the new ALJ decision instead indicates that the records show a "severely limited cervical range of motion" (*e.g.,* Tr. 1879). A review of the records is consistent with the ALJ's characterization of the findings, as the notes are located under the heading "Cervical spines" and simply state "Severe limitation of ROM." (*E.g.,* Tr. 914.)

> and a slight posterior disco-osteophytosis at C4-5. Furthermore, multiple records noted a negative Tinel's sign. The undersigned notes that multiple records found the claimant had stronger grip strength on his right side. Moreover, several treatment records showed depressed upper extremity reflexes, degenerative changes in his hands, a non-focal neurological examination, or dysesthesia. However, in November 2015, Dr. Bruner noted that the claimant had normal muscle strength and normal sensation. In August 2016, Dr. Bruner saw the claimant and he again found normal strength and sensation. One month later, Dr. Zaky saw the claimant and his exam demonstrated normal reflexes and sensation. Multiple treatment records from Dr. Zaky revealed intact sensation and a normal motor exam. While an April 2019, EMG, performed after the date last insured, found moderate to severe bilateral carpal tunnel syndrome, these findings are more than one year after the expiration of the date last insured and as such, are not reflective of the exact degree of symptoms the claimant was experiencing as of his date last insured. Rather, cervical MRI testing found no more than mild bulging and Tinel's testing was negative during the period at issue. These findings, along with the normal sensation, suggest the claimant's allegations were not as disabling as he alleged. The undersigned has accounted for the claimant's left-sided weakness, along with the findings of normal sensation and muscle strength by limiting him to frequent handling, fingering, and feeling with his bilateral upper extremities.

(*Id*. (internal citations omitted).) Thus, while the ALJ acknowledged the abnormal examination findings highlighted in the district court remand order, she also considered contrasting exams with normal findings during the same period, including: depressed upper extremity reflexes vs. normal reflexes; stronger grip strength on the right vs. normal strength; and complaints of numbness vs. exams noting intact sensation. (*Id.*) The ALJ also acknowledged an EMG from April 2019 (over a year after the September 2017 date last insured) that found moderate to severe bilateral carpal tunnel syndrome, but concluded that the EMG findings were "not reflective of the exact degree of symptoms the claimant was experiencing as of his date last insured" given both the significant passage of time and contrasting medical findings during the disability period, including mild cervical MRI findings and negative Tinel testing.[7] (*Id.*)

---

[7] "The Hoffman-Tinel sign is commonly used to indicate peripheral nerve fiber compression or regeneration . . . [and] is most associated with carpal tunnel syndrome[.]" https://www.ncbi.nlm.nih.gov/books/NBK555934/#:~:text=The%20Hoffman%2DTinel%20sign%20is%20commonly,it%20is%20most%20associated%20with (last visited 8/25/2026).

The ALJ also considered a medical opinion from Dr. Bruner in November 2017, where Dr. Bruner opined that Mr. Borzymowski could only rarely reach, pull, push, handle, or finger, but gave the opinion only "some weight" because it was "not entirely supported by his treatment records," which found a full range of motion in his neck, intact sensation, and normal motor strength, and was also "not consistent with other evidence in the record and . . . not well supported by medically acceptable clinical or laboratory diagnostic techniques."[8] (Tr. 1881-82.) The ALJ also gave "some weight" to the opinions of the state agency medical consultants, who did not find Mr. Borzymowski had any manipulative limitations, finding to the contrary that the evidence did support a limitation to frequent handling, fingering, and feeling. (Tr. 1883.)

Considering the ALJ's written decision as a whole, the Court concludes that the ALJ both complied with the requirements of the district court's prior remand order and appropriately assessed Mr. Borzymowski's manipulative limitations "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1); *see also Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009) (observing that it is the ALJ's assigned role to evaluate the medical evidence and determine the claimant's RFC); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) ("[T]he regulations require the ALJ to evaluate the medical evidence to determine whether a claimant is disabled."); SSR 96-8p, *Assessing Residual Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996) (outlining the evidence to be considered in formulating the RFC). Certainly, Mr. Borzymowski has not met his burden to show that the ALJ's findings lacked the support of substantial evidence.

Mr. Borzymowski's argument that the ALJ "improperly dismissed the . . . probative value" of the 2019 EMG results does not change this analysis. The ALJ clearly explained her

---

[8] The ALJ also gave "little weight" to an October 2018 opinion where Dr. Borzymowski also included significant manipulative limitations, citing similar reasons and the remote date of the opinion. (Tr. 1882-83.)

reasons for concluding that the results were "not reflective of the exact degree of symptoms the claimant was experiencing as of his date last insured," including: the passage of over a year's time between the date last insured and the EMG; mild cervical MRI findings during the disability period; and negative Tinel's testing during the disability period. (Tr. 1880.) These findings were well within her authority and she appropriately explained the reasons for her findings.

Mr. Borzymowski's additional argument that "the ALJ engaged in the impermissible interpretation of raw medical data by concluding that the EMG had little probative value in assessing the severity of Mr. Borzymowski's impairment" also lacks merit. (ECF Doc. 8, p. 15.) First, "an ALJ does not interpret 'raw medical data' where it has already been 'read and interpreted' by a medical professional." *Kleinhans v. Kijakazi*, No. 3:23-CV-00173, 2023 WL 7923901, at *8 (N.D. Ohio Sept. 28, 2023) (citing *Rudd*, 531 F. App'x at 727). Here, the EMG was administered and interpreted by Dr. Benedict (Tr. 1420-22) and the ALJ did not interpret the EMG differently than Dr. Benedict. She acknowledged that the EMG showed moderate to severe bilateral carpal tunnel syndrome. (Tr. 1880.) Rather than interpreting "raw medical data," the ALJ correctly observed that the EMG findings post-dated the date last insured by over a year, and she contrasted those findings with clinical findings within the disability period that included both mild cervical MRI findings and negative Tinnel's signs on examination. This analysis was an appropriate exercise of the ALJ's authority to evaluate the medical evidence. *See also Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value.").

For all of the reasons set forth above, the Court concludes that the ALJ appropriately articulated her reasons for adopting an RFC limiting Plaintiff to "frequent" manipulation with his upper extremities, building a logical bridge between the evidence and the result. While Mr.

Borzymowski may disagree with the ALJ's weighing of the evidence, "'[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen*, 800 F.2d at 545). Even if there is substantial evidence in the record to support a more limiting RFC finding, this Court cannot overturn the ALJ's finding to the contrary "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Mr. Borzymowski has not met his burden to show that the ALJ lacked substantial evidence to support an RFC limitation to "frequent handling, fingering, and feeling."

Accordingly, the Court finds that the first assignment of error lacks merit.

### C. Second Assignment of Error: The ALJ Did Not Err in Adopting an RFC That Required Use of a Cane for Ambulation but Not for Balance

In his second assignment of error, Mr. Borzymowski challenges the ALJ's adoption of an RFC requiring the use of a cane for ambulation but not for balance, arguing: (1) the distinction is not supported by the record; and (2) the limitation "reflects analysis aimed at avoiding a finding of disability." (ECF Doc. 8, p. 17.) As to the first argument, he asserts that the ALJ "minimizes the evidence regarding Mr. Borzymowski's balance difficulties" and fails to address certain evidence. (*Id.* at pp. 17-18.) And in support of the second argument, he notes that the ALJ adopted an RFC requiring a cane for balance and ambulation in the 2021 ALJ decision, but only required a cane for ambulation when issuing a new decision on remand. (*Id.* (citing Tr. 1043).) He speculates that the ALJ adopted a different limitation on remand because the new VE testified that no jobs would be available if a cane was needed for balance and ambulation. (*Id.*)

As to the second argument, the Commissioner asserts that the 2021 ALJ decision had no binding effect on the ALJ because that decision was vacated by the Appeals Council. (ECF Doc. 10, p. 14.) The Court agrees. Following the district court remand, the Appeals Council vacated

the 2021 ALJ decision in its entirety and instructed the ALJ to "complete the administrative record and issue a new decision."[9] (Tr. 1836.) "An ALJ's decision on the merits of a disability application does not become final and binding if the Appeals Council vacates that decision and remands the matter for further proceedings." *Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x. 570, 570 (6th Cir. 2003)). Once the prior ALJ decision was vacated, the ALJ was required to complete the administrative record and issue a new decision. She was not bound to adopt any part of the vacated decision, nor was she required to justify any divergence from the prior decision. Thus, the question before this Court is not why the ALJ diverged from her prior, vacated decision. Instead, the question is whether the ALJ complied with applicable regulations in the present decision and adopted an RFC that was supported by substantial evidence.

The Court therefore turns to Mr. Borzymowski's first argument: that the cane limitations adopted by the ALJ were not supported by the record and the ALJ minimized or failed to discuss evidence showing Mr. Borzymowski needed a cane for balance. The Commissioner argues in response that the ALJ properly evaluated the evidence and adopted RFC limitations supported by substantial evidence. (ECF Doc. 10, pp. 2, 13-15.) The Commissioner also notes that the record lacks the medical documentation required by SSR 96-9p to support a finding that the use of a cane was "medically required." (*Id*. at pp. 14-15.) The Court agrees on both points.

First, the Sixth Circuit has explained that an assistive device "cannot be considered an exertional limitation" in an RFC if the device "was not a necessary device for claimant's use." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Under SSR 96-9p, an ALJ may

---

[9] While the Appeals Council has discretion to uphold portions of a prior decision as final in certain circumstances, that is not what happened in this case. *See* Hearings, Appeals and Litigation Law (HALLEX) manual § I-3-7-1; *see also* https://secure.ssa.gov/apps10/poms.nsf/lnx/2501370001 (last visited 8/25/2026).

only find a hand-held assistive device to be medically necessary where the record contains "*medical documentation* establishing the need for a hand-held assistive device to aid in walking or standing, and *describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996) (emphasis added). Here, the Commissioner acknowledges that Mr. Borzymowski had a prescription for a cane, but correctly observes that "the prescription does not indicate that Plaintiff needed the cane for balancing." (ECF Doc. 10, p. 14 (citing Tr. 1876, citing Tr. 556).) The Commissioner also acknowledges Mr. Borzymowski's subjective reports that he needed a cane to balance, but correctly argues that "a claimant's testimony 'does not qualify as medical documentation establishing the need for a cane under SSR 96-9p.'" (*Id.* at pp. 14-15 (quoting *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023).)

Mr. Borzymowski does not specifically address this issue in his brief (ECF Doc. 8), and did not file a reply brief. Further, based on an independent review of the evidence highlighted in Plaintiff's brief, the Court does not find "medical documentation" that specifically establishes Mr. Borzymowski requires a cane for balancing. (*See id.* at pp. 17-18 (citing Tr. 556, 642-43, 644, 646, 650, 656, 665, 698-99, 727, 745, 747-49, 751, 756, 765, 767).) Because the record does not support a finding that a cane was "medically required" for Mr. Borzymowski to balance, as contemplated in SSR 96-9p, the Court must conclude that Plaintiff has not met his burden to show that the ALJ erred when she did not require a cane for balancing in the RFC.

Even setting aside the requirements of SSR 96-9p, the Court also agrees with the Commissioner that the ALJ appropriately considered the relevant evidence and reasonably concluded that Mr. Borzymowski did not require a cane for balancing. In support of his

argument that the ALJ "selectively cited" supporting evidence and "failed to address" contrary evidence, Mr. Borzymowski highlights evidence that he ambulated with an antalgic gait, worked with physical therapy to improve stability, reported chronic low back pain with exams showing positive straight leg raise and lumbar paraspinal tenderness, underwent a lumbar x-ray that showed disc narrowing and facet joint arthrosis, and had a significant cervical impairment leading to migraine headaches, torticollis and dizziness. (ECF Doc. 8, pp. 17-18.) But a review of the ALJ's written decision demonstrates that Plaintiff's argument is unfounded.

After considering Mr. Borzymowski's assertion that he needed a cane for balance and ambulation, the ALJ concluded that the record only supported a need to use a cane to ambulate. (Tr. 1879-80.) In reaching this conclusion, she discussed the relevant evidence as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not supported by the evidence in the file. At the hearing, the claimant testified that he used a cane for balance and ambulation. This is not consistent with the evidence in the file. In May 2016, the claimant was ambulating with a cane. In September 2016, the claimant stated that he frequently lost his balance. Physical examination at that time found no atrophy, and no subluxation was noted on movement of his upper extremities, head, or neck. Additionally, the claimant had normal sensation and an antalgic gait. Lumbar spine x-rays found mild to moderate disc narrowing at L1-3, mild narrowing at L3-4, and moderate disc narrowing at L5- S1. Additionally, facet joint arthrosis was seen at L5-S1. On January 6, 2017, a lumbar spine MRI revealed mild disc desiccation at L3-4 with slight annular bulging and a slight anterior indention of the thecal sac, and moderate degenerative disc disease at L5-S1 with mild central disc protrusion and mild facet joint arthrosis. Straight leg raise testing was positive, at times, and at other times it was negative. On September 20, 2016, the claimant had an antalgic gait and a positive straight leg raise test. In August 2017, the claimant's gait was described as normal. A positive straight leg raise test was also seen in December 2016. One month later, the claimant's straight leg raise testing was negative, although his gait as again described as antalgic. In April and May 2017, the claimant had a positive straight leg raise test and his gait was "grossly normal." Given the claimant's findings of positive, and negative, straight leg raise testing, and multiple issues with the claimant's gait, it is reasonable to permit the use of an assistive device for ambulation, however it does not appear necessary for balance.

(Tr. 1879-80 (internal citations omitted).) Thus, the ALJ acknowledged examination findings showing both an antalgic and a normal gait and findings of both positive and negative straight leg raise testing; she also acknowledged abnormal lumbar x-ray and MRI findings. In her earlier summary of the medical records, the ALJ also discussed Plaintiff's cervical imagery and related examination findings and treatment modalities, including his participation in physical therapy. (Tr. 1876-79.) She also considered the medical opinion of state agency medical consultant Dr. McKee, who did not find that Mr. Borzymowski required an assistive device for any purpose, before concluding that the record did support the need for a cane for ambulation. (Tr. 1883.)[10]

This record does not support Mr. Borzymowski's argument that the ALJ failed to address material evidence, selectively cited supporting evidence, or otherwise "fail[ed] to properly address the balance-related symptoms." (ECF Doc. 9, pp. 17-18.) Therefore, and for the reasons further articulated above, the Court finds Plaintiff has not met his burden to show that the ALJ: erred under SSR 96-9p when she adopted an RFC that required the use of a cane for ambulation only; failed to build a logical bridge between the evidence and the result; or adopted an RFC that lacked the support of substantial evidence.

Accordingly, the Court finds the second assignment of error lacks merit.

## V. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.

August 25, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

[10] Although it does not appear to have been discussed in the ALJ's analysis (Tr. 1881-82), the Court observes that the two medical opinions of treating physician Dr. Bruner, both dated after the date last insured, indicate that Mr. Borzymowski needs a cane for walking, but do not indicate that a cane is required for balance (Tr. 861, 1027).